Tom W. WATSON, Appellant,

v.

C. Ira LEWIS, Appellee.

No. 2–61237.

Supreme Court of Iowa.

Dec. 20, 1978.

Robert J. Stone and Thomas M. Horan, Marion, for plaintiff-appellant.

Keith D. Mossman and Van D. Zimmer, of Mossman & Mossman, Vinton, for defendant-appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, McGIVERIN and LARSON, JJ.

LARSON, Justice.

Tenant under alleged farm lease commenced an action under Chapter 646, The Code, demanding possession of the land, or in the alternative, money damages for refusal to deliver possession. A separate count, pled in the alternative, claimed damages under quantum meruit for plowing done in anticipation of the following crop year. Following a jury verdict for plaintiff under Count I, the trial court granted judgment notwithstanding the verdict as to that count and a new trial as to Count II. No appeal has been taken as to Count II. Upon tenant's appeal of the order granting judgment notwithstanding, we affirm the trial court.

The sole issue here is the measure of damages to be applied in a claim for breach of a crop-share lease.

A motion for judgment notwithstanding the verdict under Rule of Civil Procedure 243 must stand on grounds raised in the directed verdict motion. *Dutcher v. Lewis*, 221 N.W.2d 755, 760 (Iowa 1974); and on appeal from such judgment, review by an appellate court is limited to those grounds raised in the directed verdict motion. *Meeker v. City of Clinton*, 259 N.W.2d 822, 828 (Iowa 1977). When considering a motion for judgment notwithstanding the verdict, the court must view the evidence in the light most favorable to the party against whom the motion is directed, in this case, the plaintiff. *Winter v. Honeggars' & Co.*, 215 N.W.2d 316, 321 (Iowa 1974).

The evidence, when viewed in this light, showed that in September, 1976, the parties entered into oral negotiations for the lease of two tracts of farm land of 100 and 200 acres respectively.

After lengthy discussions, the parties agreed Watson could farm the land for the next crop year. Several details concerning cost sharing on fertilizer and seed, and site of crop deliveries were discussed. The negotiations and farm tour lasted several hours; the parties thereupon shook hands on the deal. Lewis said his "word was good;" that he would have a written lease drawn up "in about three or four weeks" but wanted Watson to do some fall plowing "to show his good faith."

Following this meeting, Watson did plow approximately 175 acres. After the plowing was completed, Watson found out that Lewis had rented the land to another tenant for the following crop year under a five-year lease. Plaintiff then commenced this statutory action of "ejectment" and, in the alternative a claim under quantum meruit for the value of his plowing.

There was some dispute at the trial as to whether the discussions of the parties outlined above created an oral lease, or were only preliminary, with no binding effect until preparation of a written lease because of the unresolved issue of cost-sharing on crop expenses and other matters.

■ Negotiations by proposed lease parties may be deemed to have resulted in a completed lease, rather than merely an option or agreement to negotiate further, even though certain customary provisions of such leases are omitted. *President Street Corp. v. Bolton Realty Corp.*, 300 N.Y. 63, 89 N.E.2d 16 (N.Y.Ct.App.1949).

■ Appellee in this court adopts the appellant's statement of the facts, apparently conceding that a lease did exist. In any event, under our view of the law it is not material whether or not a valid lease existed, because the tenant failed to establish his damages under a lease, even if it was established.

At the trial, tenant Watson sought to prove his damages by introducing evidence of the rental value, based upon the amount he had paid for similar land in the area. Without passing on the question of whether this properly established the fair and reasonable rental value, we hold this is not the proper measure of damages here. He did not introduce evidence of any excess of rental value over that which he had agreed to pay (his "rental bargain") nor of any lost profits, recoverable as incidental damages in certain cases. *See e. g., Dopheide v. Schoeppner*, 163 N.W.2d 360, 366–67 (Iowa 1968). He testified that he was able to only partially replace this land, and was damaged because of his inability to fully use his farming capabilities. However, he did not attempt to establish how much these incidental damages were.

As to his quantum meruit claim, Watson did attempt to establish the value of the plowing, but that claim, under Count II, is not before us.

■ Chapter 646, The Code, is a codification of the common-law action of ejectment, *Jensen v. Nolte*, 233 Iowa 636, 10 N.W.2d 47 (1943), and provides, in addition to ejectment, for alternative relief in money damages in the event the tenant may not be put in possession of the land. *See* § 646.18, The Code. No measure of damages is set out in this chapter. This statutory remedy is available to a lessee of real estate, as well as parties claiming ownership interests. *Jensen v. Nolte*, 233 Iowa at 639, 10 N.W.2d at 49.

The action is by ordinary proceedings and no other causes of action shall be joined with it. Section 646.1, The Code. Despite the prohibition of joinder, Count II was included in the petition to seek recovery for the value of plowing done and no objection was made by defendant. The jury was instructed that it could return a verdict for Watson under one theory, or the other, but not both.

The defendant, following the plaintiff's evidence, moved for a directed verdict on several grounds, including the ground that no evidence regarding a proper measure of damages had been presented in support of the claim under Count I. This motion was overruled.

Following presentation of the defendant's case, the motions were renewed and again overruled. The jury was thereafter charged in Instruction 6 regarding the measure of damages as follows:

> If . . . you find that the plaintiff is entitled to recover damages under count I of his petition, then you shall determine the amount of damages based upon the fair rental value of the real estate for the term of the lease.

The term "fair rental value" was not defined in the instructions.

The jury returned a verdict for the plaintiff under Count I (ejectment) but pursuant to the court's instruction, did not render a verdict as to the alternative Count II (quantum meruit). Following the verdict, Lewis moved for judgment notwithstanding the verdict as to the measure of damages and other matters, and the motion was granted. The trial court stated that no evidence was introduced as to loss of income or profits,

plaintiff having shown only its reasonable cash rental basis.

The trial court, on its own motion, also entered an order granting a new trial as to Count II. It stated that: "had a directed verdict been granted as to Count I, then the jury would have passed on that count alone. As these two counts were pled and submitted in the alternative . . . no verdict was rendered on count II of the petition."

Defendant does not appeal from the trial court's granting, sua sponte, the new trial under Count II, and we therefore limit our review to the matter of the judgment notwithstanding the verdict.

■ In determining the propriety of this order, we view the evidence in accordance with the same principles required for review by a trial court on a motion for directed verdict, i. e., when viewed favorably for plaintiff, was there sufficient evidence to generate a jury question? *Meeker v. City of Clinton*, 259 N.W.2d 822, 828 (Iowa 1978).

In determining the sufficiency of the evidence as to damages, we must first determine the proper measure to be applied. Appellant contends it is based upon the rental value of the premises for the time during which the tenant is deprived of possession. Here, he testified he paid $70 per acre as rental for similar land, and claimed that he should recover that amount under the facts of this case.

Appellant relies upon *Larson v. Baker*, 235 Iowa 200, 16 N.W.2d 262 (1944) for authority for his contention that rental value is the measure for lessee damages. In that case the defendant refused to deliver possession to the lessee, who had paid $50 advance rent. This was returned to lessee and the premises rented to a third party. The municipal court granted judgment for the lessee for $50, and this was affirmed by the supreme court. Apparently Watson here contends that the advance rental paid constituted the proper measure of damages. Other than the fact that the amount advanced by lessee and damages allowed by the trial court were identical amounts,

there is nothing in that opinion to substantiate Watson's claim. To the contrary, the supreme court said, as to this amount:

> The damages allowed were almost nominal. The evidence showed plaintiff had been put to the *expense* of one move, and the *trouble* of preparing for another. (Emphasis added.) 235 Iowa at 204, 16 N.W.2d at 265.

This language is more compatible with a measure of damages based upon lessee's loss of profits and incidental expenses than with plaintiff's theory of damages based upon rental value. In any event, the issue of the measure of damages was not raised in *Larson*.

■ *Adair v. Bogle*, 20 Iowa 238 (1866), is close on its facts with this case. This was an action by a lessee against the owner of farm land to recover damages for his refusal to allow the lessee to enter the premises. He alleged that, relying upon this lease, and at great expense and loss of time, he prepared to take possession of the farm, and failed to make arrangements to get other farm land. It was contended by the tenant that the measure of damages was the difference between the actual value of the leasehold interest and the amount provided by the agreement. The owner contended that this action amounted to one brought under a covenant of quiet enjoyment of the premises, and that the plaintiff in such a case was limited to only nominal damages. The supreme court held that in such an action the general rule for the measure of damages was the difference between the rent provided by lease and the value of the premises for the term of the lease. This element of damage is referred to in a later Iowa case as lessee's "rental bargain." *Dopheide v. Schoeppner*, 163 N.W.2d 360, 366 (Iowa 1968). If the value of the possession of the premises for the term of the lease is no greater than the rent provided for, then the tenant has not been substantially injured and can recover only the nominal damages even though the landlord, without just cause, refused to grant possession. If the value of the use of the premises is greater than the rent provided by the agreement, the lessee is entitled to the ben-

efit of this contract and will recover the difference between those amounts.

In addition to the damages for breach of the lease terms (even if only nominal) the tenant is entitled to a reasonable amount for his incidental expenses. The court in *Adair* said:

> If other damages have resulted as the direct and necessary or natural consequences of the defendant's breach of the contract, these are recoverable, certainly where, as in this case, they are specifically set forth. For example, if the plaintiff in good faith and relying upon the contract, made preparations to remove on to the defendant's farm, and these preparations were rendered useless in consequence of the defendant's refusal to comply with his contract, the authorities hold that there may be a recovery of the loss sustained. 20 Iowa at pp. 244–5.

49 Am.Jur.2d Landlord & Tenant § 22 at page 65 states the general rule as follows:

> [A]ccording to the rule prevailing in the great preponderance of jurisdictions in the United States the proposed lessee is entitled to recover as general damages the actual value of his bargain as shown by the excess, if any, of the actual rental value of the premises over the agreed rent. This however, is not necessarily the extent of his right of recovery; under special circumstances warranting it, damages may also be recovered for losses that are the natural, direct, and necessary consequences of the breach where they are capable of being estimated by reliable data and are such as should reasonably have been contemplated by the parties. Thus, where there was a wilfull refusal on the part of the proposed lessor to give possession, special damages consisting of expenses incurred by the lessee in preparing to remove to and occupy the premises have been held recoverable.

The measure of damages discussed in *Adair, supra*, was also applied in *Hall v. Horton*, 79 Iowa 352, 44 N.W. 569 (1890), which held expenses in coming from a distance to occupy the premises, together with compensation for the loss of time in waiting

for the lease to be executed, the salary of an employee expected to be used in the new business, and other expenses were recoverable in an action for breach of an agreement to lease a hotel. In *Dilly v. Paynesville Land Co.*, 173 Iowa 536, 155 N.W. 971 (1916), the owner of land entered into inconsistent leases with two different tenants. On the issue of damages to the first tenant the court stated that "the general rule for the measurement of damages is the difference between the rent reserved and the value of the premises for the term, and such other damages as are shown to have resulted as the direct or necessary or natural consequences of the breach of the contract."

These authorities were followed by our court in *Dopheide v. Schoeppner*, 163 N.W.2d 360, 364–67 (Iowa 1968), which held that incidental damages for breach of a lease were to be dealt with under the same principle as in other contract cases. It stated that such incidental damages must be (1) reasonably within the contemplation of the parties; (2) must be the natural and direct result of the breach; and (3) must be established with reasonable certainty, not based upon mere speculation and conjecture.

The matter of whether the amount of damages in the instant case was too speculative or conjectural was a matter of concern to the defendant who contended in his objection to Instruction 6 that allowing money damages would be "contrary" to the terms of the lease, which was on a crop-share basis. In both *Adair* and *Dopheide*, *supra*, however the farm leases were on a crop-share basis, and this court approved a money-damage basis for recovery. In any event, mere difficulty in determining the amount of damages should not prevent them from being allowed. *Dilly v. Paynesville Land Co.*, 173 Iowa 536, 544, 155 N.W. 971, 974 (1916) (crop-share lease, money-damage basis for recovery approved).

Some of the cases cited above involved the measure of damages to be applied where there was a breach of a promise to enter into a lease. Appellant claims these

are distinguishable from this case, where there was a refusal by a lessor to deliver possession to the lessee. The basis for this distinction is clearly not borne out by our cases. *Dopheide v. Schoeppner, Dilly v. Paynesville Land Co.,* (dictum) and *Adair v. Bogle, supra,* all involved a refusal to deliver possession to the lessee, and all applied or approved the measure of damages as herein set out.

Appellant relies upon statements in 25 Am.Jur.2d Ejectment § 151, p. 638 that "the recovery is ordinarily measured by the rental value of the property" and in 28 C.J.S. "Ejectment" § 138b, p. 1031, that "[to determine] value of the rents and profits . . . the rental value of the premises is admissible." There is nothing in those authorities, however, which is inconsistent with the established law of Iowa in this matter. The "rental value" referred to in those quoted sections cannot be equated with gross rental payments which constituted the tenant's only evidence in support of his claim of damages. Such term clearly means the "benefit of the tenant's bargain" as applied to the facts of this case.

■ Appellant contends that "both evidence of prospective profits and fair rental value of the premises or evidence of either may be introduced into evidence where damages are appropriate in an ejectment case." The problem with this contention as it applies to this case is that as to the first alternative, loss of profits, no evidence was introduced by the plaintiff. As to the second, he erroneously sought to prove fair rental value through evidence of gross rental payments on other land, clearly missing the gist of this basis of recovery, which is the "benefit of his bargain." *Dopheide v. Schoeppner,* 163 N.W.2d 360, 366 (Iowa 1968) ("rental value" and "value of the use of the premises" held to be synonymous).

Presumably, expert testimony could have established whether or not his lease here was in fact a bargain, and if so, how much, when compared to the "reasonable" return under other leases, whether on a crop-share or cash basis. *See Dopheide, supra,* at pp. 366–67. Plaintiff offered no such evidence.

In *Dilly v. Paynesville Land Co., supra,* the court discussed the "fair rental value" of the property as a measure of damages. It is only a part of the recovery if it can be shown that the plaintiff had negotiated a bargain contract. In discussing the first tenant's damages for having been denied possession for three days before he could secure other land the court said:

[T]he only loss to the plaintiff which resulted from the breach of this contract under this record is the difference between the fair value of the leasehold interest acquired under his lease and the amount he agreed to pay therefor, and then only in the event it [was] shown that the leasehold interest acquired was greater than the amount which he agreed to pay . . . . (173 Iowa at pp. 544–5, 155 N.W. at 974.)

■ When applied to this case, this measure of damages, insofar as the value of plaintiff's bargain is concerned, may not result in more than nominal damages. That is, if the crop-share lease was no more favorable to the tenant than those otherwise available, he would be entitled to only nominal damages. If, as he claimed, he delayed looking for other land and did not fully utilize his farming capabilities he might be entitled to incidental damages as provided by the above authorities if he had introduced evidence on them.

■ We hold, therefore, that as to this case, the proper measure of damages, providing they are supported in the record is: (1) the benefit of plaintiff's bargain, as explained above, and (2) incidental damages (provided they were reasonably contemplated by the parties, were the natural and direct result of the breach, and can be established "with reasonable certainty" as required by *Dopheide v. Schoeppner,* 163 N.W.2d 360, 367 (Iowa 1968)).

The trial court here recognized that under the proof presented by plaintiff none of the above bases for recovery could properly have been presented to the jury. By granting a judgment notwithstanding the verdict for the defendant as to Count I and grant-

ing a new trial to plaintiff under Count II, it sought to correct its error as to plaintiff's claim for lease damages and yet allow him a chance to salvage his alternative claim under quantum meruit.

We therefore affirm the trial court on the order granting judgment notwithstanding the verdict and order Count I dismissed. The order granting a new trial as to Count II is not before us. The matter shall therefore proceed to trial as therein ordered.

AFFIRMED.